UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DeAmontae Manning,                                    Case No.  3:23-cv-02050

        Plaintiff,

    v.                                                        MEMORANDUM OPINION
                                       AND ORDER

Warden Kimberly Henderson, *et al.*,

        Defendants.

## I.  BACKGROUND

*Pro se* Plaintiff DeAmontae Manning brings this civil rights action against the Toledo

Correctional Institution ("ToCI") Warden, fourteen ToCI Corrections Officers, a ToCI Nurse, and

a ToCI Case Manager.  He alleges he was disciplined for something he did not do, was assaulted by

Corrections Officers, was denied proper meals on the last day of Ramadan, and was controlled by a

device implanted inside of his body that allowed prison personnel to manipulate his body

movements, thoughts, and speech.  (Doc. No. 1 at 13-23, 29-30).  He asserts claims for violations of

his Eighth Amendment rights, establishment of religion and retaliation in violation of his First

Amendment rights, and denial of due process in violation of the Fourteenth Amendment.  He also

asserts the Defendants acted negligently.  He seeks monetary damages.

       Plaintiff's Complaint can be divided into four separate incidents.  First, Plaintiff asserts he

wrongfully received a conduct report.  He alleges that on December 9, 2022, Corrections Officers

Fahle and Petiniot were delivering breakfast trays to the cells.  He claims he returned his tray to

Petiniot.  He alleges Fahle and Petiniot returned to his cell a few minutes later and asked him to

return the breakfast tray.  Plaintiff told them he had already given it to them, and they walked away.

Fahle then wrote a conduct report against Plaintiff stating that Plaintiff had refused to return his tray.  He claims Warden Henderson determined that as a sanction, Plaintiff should be placed on meal loaf for 72 hours.  Plaintiff contends he was not informed that Fahle had written a conduct report and was not given an opportunity to dispute it.  He contends Henderson denied him due process and that Fahle retaliated against him by writing the conduct report.

Plaintiff states Corrections Officers Petiniot and Sparks came to his cell the following day with a breakfast tray containing meal loaf.  Plaintiff disputed that he was on meal loaf.  He claims Sparks opened the tray slot and pushed the tray through, causing it to land on the floor.  What happened next is a bit unclear, though Plaintiff appears to allege his hand or arm was somehow in the slot for the tray.  He claims Sparks and Petiniot began pulling on his arm and in the process bent his wrist and smashed his hand in the door causing injury to it.  Plaintiff does not allege that he sought medical attention following this incident.  He asserts Petiniot and Sparks used excessive force in violation of his Eighth Amendment rights.

Second, Plaintiff asserts the Defendants did not accommodate his religious practices. Plaintiff states he is Muslim and observes the holy month of Ramadan.  The Islamic calendar is based around the lunar cycle, rather than a solar cycle, which causes it to move approximately ten days every year.  Ramadan officially begins when the month of Shaban, the eighth month of the Islamic calendar, ends.  Its precise date is difficult to predict as it is based on the official sighting of the new moon over Mecca.  This date may vary slightly by sect as some use the timing of the astrological new moon while other require an official physical observance of the moon which may be obscured by clouds.

Ramadan lasts approximately 30 days, ending with Eid al-Fitr, the Muslim celebration officially marking the end of Ramadan. The exact timing of Eid al-Fitr also is based on the sighting of the new moon and also is difficult to predict precisely.  Eid al-Fitr officially begins at the start of

the Islamic month of Shawwal, the tenth month of the Islamic calendar, and is marked by prayer, feasts, and acts of charity. The celebration can last up to three days depending on the particular sect to which the celebrant belongs.[1] During Ramadan, participants that are able to do so are expected to fast from sunrise to sunset. Meals are permitted to be consumed in the pre-dawn hours and after sunset each day. In 2023, Ramadan began for most Muslims at sunset on Wednesday, March 22nd and ended with the start of Eid al-Fitr at sunset on Friday, April 21st.

Plaintiff and ToCI had a different understanding of the ending date of Ramadan. Plaintiff claims that on April 21, 2023, at 1:45 p.m., Corrections Officer Ellis served him a meal. Plaintiff told him that it was still Ramadan, but Ellis informed him Ramadan ended on April 21, 2023. On April 22, 2023, Plaintiff alleges Cheaib and Garrett did not serve him a pre-dawn breakfast at 4:30 a.m. Similarly, he alleges McGee and Hupp did not provide him with a post sunset hot meal at 8:30 p.m. The officers contended Ramadan was over. While Plaintiff alleges it was not, he does not indicate the day on which he believed Ramadan ended. He alleges that these Defendants violated the Establishment Clause of the First Amendment.

Third, Plaintiff alleges Corrections Officer Ridgeway assaulted him. He does not provide any context for this incident. He states only that on May 22, 2023, Officer Ridgeway sprinted toward him, tackled him, and punched him, causing him to bleed and swell. He alleges Nurse Matthew did not thoroughly examine him before proclaiming that Plaintiff was not injured. Plaintiff asserts Ridgeway used excessive force and Matthew was deliberately indifferent to his serious medical needs.

Finally, Plaintiff alleges Warden Henderson, Case Manager Tomsek, and Corrections Officers Drayton, Narn, Ford, Lawrence, and Henrickson used a device installed in his body

---

[1] *See* https://islamic-relief.org/ramadan/ramadan-timetable/; https://www.muslimaid.org/what-we-do/religious-dues/when-is-ramadan/.

3

through his food to control his body movements in his hands, arms, legs, and internal organs.  He

contends the Defendants used this device to make his veins show, cause his muscles to stiffen, cause

temporary paralysis, cause migraines, delete memories, cause difficulty breathing, and alter his vision.

He also states the Defendants could speak to him through the device, force him to exercise, and

control his speech.  He claims they violated his Eighth Amendment right to be free from cruel and

unusual punishment.

## II.     STANDARD

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), I

am required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim

upon which relief can be granted, or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*,

490 U.S. 319, 327-28 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  A claim

lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or

when the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.  A cause of action fails to

state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "'short and plain statement of the claim showing that the pleader

is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

The factual allegations in the pleading must be sufficient to raise the right to relief above the

speculative level on the assumption that all the allegations in the Complaint are true.  *Twombly*, 550

U.S. at 555.  The Plaintiff is not required to include detailed factual allegations, but must provide

more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at

678.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of

action will not meet this pleading standard.  *Id.*

In reviewing a Complaint, I must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998). I have discretion, however, to refuse to accept without question the truth of Plaintiff's allegations when they may be fairly described as fanciful, fantastic, delusional, wholly incredible, or irrational. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

### III.   ANALYSIS

As an initial matter, Plaintiff's allegation that Henderson and the Corrections Officers used a device they implanted in his body through his food to control his body movements, body functions, and thoughts is wholly incredible. These claims lack an arguable basis in fact and fail to state a claim upon which relief may be granted.

Plaintiff next claims Henderson denied him due process by approving the sanction of meal loaf for a 72-hour period without providing him with notice and an opportunity to be heard at a hearing. Due process protections were only triggered if the sanction imposed deprived a plaintiff of a constitutionally protected liberty or property interest. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 223 (1976). Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The Due Process Clause, standing alone, does not confer a liberty interest in freedom from state action taken within the sentence imposed. *Id.* at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law" and does not trigger the Due Process Clause. *Id.* at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Generally, unless the sanction imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," no liberty interest is implicated. *Sandin*, 515 U.S. at

484. Assignment to a super-maximum-security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in disciplinary confinement is considered to be "within the range of confinement normally expected for [a prisoner]." *Sandin*, 515 U.S. at 487. There is no indication in the Complaint that a sanction of meal loaf for a period of 72 hours imposed "atypical and significant hardship" on Plaintiff "in relation to the ordinary incidents of prison life." *Id.* at 484. Henderson did not deny Plaintiff due process by failing to give him notice and an opportunity to be heard before imposing the meal loaf sanction.

Plaintiff also asserts, without elaboration, that Fahle retaliated against him by filing a false conduct report. Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a *prima facie* case for retaliation prohibited by the First Amendment, Plaintiff must establish: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

While the filing of a false conduct report may in some circumstances be considered an adverse action, Plaintiff does not allege he engaged in protected conduct or that Fahle was motivated by the protected conduct when he wrote the conduct report. Therefore, Plaintiff fails to state a claim of retaliation against Fahle.

Plaintiff contends Corrections Officers Ellis, McGee, Hupp, and Cheaib violated the Establishment Clause of the First Amendment by failing to recognize the last day that Plaintiff observed Ramadan. This appears to have been based on a difference of understanding of the date of the ending of Ramadan. Plaintiff alleges he was still observing it on April 22, 2023, while prison officials believed it ended at sunset on April 20, 2023. Plaintiff does not allege facts suggesting that

any of the Defendants denied his participation in the observance of Ramadan on any of the other days of the month.

Isolated instances of errors in the accommodation of the plaintiff's religious beliefs do not state a claim under the First Amendment. *See Colvin v. Caruso*, 605 F.3d 282, 293-94 (6th Cir. 2010) (holding that isolated instances of errors in the provision of a kosher meal do not state a claim under the First Amendment). Plaintiff fails to plausibly allege the Corrections Officers violated his First Amendment rights.

In addition, Plaintiff claims Officers Petiniot, Sparks, and Ridgeway used excessive force against him, while Matthew failed to thoroughly examine him before concluding he suffered no injuries. When prison officials are accused of using excessive physical force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The plaintiff is not required to show that he suffered a serious injury, although the extent of his injuries may be considered in determining whether the use of force was wanton and unnecessary. *Id.* at 7.

Other factors such as "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'efforts made to temper the severity of a forceful response'" may also be considered by the court. *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Plaintiff appears to allege he placed his arm through the opening in his cell door after Petiniot pushed the food tray into Plaintiff's cell, and that Petiniot and Sparks then grabbed his hand and arm before yanking it and banging it against the opening in the cell door. (Doc. No. 1 at 16). Though Plaintiff alleges this incident drew blood, he does not allege he sought medical attention following the incident. Plaintiff has not alleged facts which show the officers' use of force was not reasonably related to the need for the application of

7

force, even when viewing his allegations in the light most favorable to Plaintiff.  Therefore, I conclude Plaintiff has not alleged sufficient facts to support a plausible Eighth Amendment claim against Petiniot and Sparks and dismiss this claim without prejudice.

Moreover, Plaintiff's allegations against Ridgeway are not credible.  On January 12, 2024, Plaintiff filed a supplement to his complaint, attempting to show he had exhausted his administrative remedies regarding this alleged incident.[2]  (Doc. No. 3).  But the administrative investigation revealed Ridgeway was not present for the incident at all.  (*Id.* at 3) (identifying participants in use of force incident).  Thus, Ridgeway could not have used excessive physical force against Plaintiff on May 22, 2023, and could not have violated Plaintiff's Eighth Amendment rights on that date.

Plaintiff also alleges that Matthew failed to thoroughly examine him on May 22, 2023, before declaring that Plaintiff had not suffered injuries.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  But this protection does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration.  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

Further, prisoners are not entitled to unfettered access to the medical treatment of their choice.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health

---

[2]  I may consider "items appearing in the record of the case" in determining whether the complaint states a plausible claim for relief.  *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)

threats but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Id.* at 9-10 (requiring extreme or grave deprivation).

In the context of medical care, an inmate must first allege facts that suggest he was suffering from an objectively serious medical condition.  "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, No. 03–2633, 2004 WL 2203585 (6th Cir. Sept. 15, 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

Plaintiff does not provide any facts about the injuries he sustained, other than asserting he was bleeding and experienced swelling.  A defendant cannot be held liable under the Eighth Amendment unless that defendant knew of and disregarded "an excessive and imminent health risk." *Gibson v. Moskowitz*, 523 F.3d 657, 662 (6th Cir. 2008).  Plaintiff's allegations fall far short of this standard and I conclude he fails to state a plausible claim for relief against Matthew.

Finally, Plaintiff asserts numerous negligence claims.  Negligence is a state law cause of action.  State employees are immune from civil liability under Ohio law for injuries caused in the performance of the employee's duties "unless the . . . employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless . . . the . . . employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 9.86.  The Ohio Court of Claims that has the "exclusive, original jurisdiction to determine, initially, whether the . . . employee is entitled to personal immunity under section 9.86 . . . ." Ohio Rev. Code § 2743.02(F).

Federal courts, including this court, therefore cannot exercise supplemental jurisdiction over state law claims against a state employee in his or her individual capacity until the Ohio Court of Claims determines that the employee is not entitled to immunity under Ohio Revised Code § 9.86. *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989).  Accordingly, unless and until the Ohio Court

of Claims decides that Defendants may not invoke immunity from civil liability conferred by Ohio Revised Code § 9.86, this court has no jurisdiction to consider the state law claims asserted against them.

## IV. CONCLUSION

Having considered and examined the *pro se* Plaintiff's pleadings to determine their legal viability, I conclude Plaintiff fails to state a claim upon which relief may be granted. Therefore, this action is dismissed pursuant to 28 U.S.C. § 1915(e). Plaintiff's excessive force claims against Petiniot and Sparks are dismissed without prejudice. All other claims are dismissed with prejudice. I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. This case is closed.


So Ordered.

s/ Jeffrey J. Helmick
United States District Judge